# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

RICHARD W. DANIELS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL ACTION NO.: 5:16-cv-8

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Morton J. Gold, Jr., ("the ALJ" or "ALJ Gold") denying his claim for a period of disability, disability insurance benefits, and supplemental security income benefits. Plaintiff urges the Court to reverse the ALJ's decision and award him benefits or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case.

## BACKGROUND

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income benefits on April 4, 2012, alleging that he became disabled on April 4, 2012, due to high blood pressure, back and heart problems, and sleep apnea. (Doc. 9-3, p. 2.) After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On November 6, 2013, ALJ Gold conducted a hearing at which Plaintiff,

who was represented by counsel, appeared and testified. Dr. Ron Spitznagle, a vocational expert, also appeared at the hearing. ALJ Gold found that Plaintiff was not disabled within the meaning of the Social Security Act. (Doc. 9-2, p. 21.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id. at p. 2.)

Plaintiff, born on October 24, 1963, was fifty (50) years old when ALJ Gold issued his final decision. He has a limited ninth grade education. (Id. at p. 29.) Plaintiff's past relevant work experience includes employment as an electrical helper. (Id.)

## DISCUSSION

### I. The ALJ's Findings

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If

the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of April 4, 2012, through the date of ALJ Gold's decision on April 16, 2014. (Doc. 9-2, p. 23.) At Step Two, the ALJ determined that Plaintiff had recurrent arrhythmias, bilateral osteoarthritis of the knees, and degenerative disc disease of the lumbrosacral spine exacerbated by obesity, conditions considered "severe" under the Regulations. However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment.[1] (Id.) ALJ Gold also determined Plaintiff suffers from hypertension and hyperlipidemia but concluded these conditions were non-severe impairments. (Id. at p. 24.) The

---

[1] ALJ Gold specifically noted Plaintiff did not meet Listing 1.02 (major dysfunction of a joint), Listing 4.04 (chest discomfort associated with myocardial ischemia), or Listing 1.04 (compromise of a nerve root). (Doc. 9-2, pp. 24–25.)

3

ALJ found that Plaintiff had the residual functional capacity, through the date of his decision, to perform work at the light exertional level, with the following exceptions: no climbing of ropes, ladders, or scaffolds; standing or walking and pushing or pulling for six hours in an eight-hour workday; lifting or carrying twenty pounds occasionally (up to one-third of an eight-hour workday) and ten pounds frequently (up to two-thirds of an eight-hour workday); occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling; and avoiding concentrated exposure to extreme vibrations. (Id. at pp. 25–26.) At the next step, ALJ Gold noted Plaintiff was not able to perform his past relevant work as an electrical helper. (Id. at p. 29.) The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of ticket taker, photocopy machine operator, and plastic hospital product assembler, all of which are light, unskilled jobs which exist in significant numbers in the national economy. (Id. at p. 30.)

## II.  Issues Presented

Plaintiff contends the ALJ erred by failing to properly take into account that, at the time of the hearing, Plaintiff was already fifty (50) years of age, which required the application of different Rules and regulations. Plaintiff also contends the ALJ failed to adequately discuss the fact he is illiterate. In addition, Plaintiff asserts the ALJ's residual functional capacity finding for light work should have been at the sedentary level, at best. Plaintiff alleges ALJ Gold mischaracterized the vocational expert's testimony. (Doc. 11, p. 1.)

## III.  Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A

reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## IV.     Whether the ALJ Considered Plaintiff's Age

Plaintiff contends that, under Medical-Vocational Guideline Rule 202.09, he is disabled at age fifty (50). (Doc. 11, p. 2.) Plaintiff states the ALJ found that Plaintiff was unable to return to his past relevant work.[2] The Commissioner asserts the ALJ considered Plaintiff's age in making his determination that Plaintiff is not disabled. (Doc. 12, p. 9.)

An ALJ "must consider a claimant's age on a case-by-case basis in adjudicating claims of disability." Strople v. Colvin, No. 3:13-cv-1518-J-34MCR, 2015 WL 1470866, at * 8 (M.D. Fla. Mar. 31, 2015) (citing Broz v. Heckler, 721 F.2d 1297, 1299 (11th Cir. 1983)). "If you are closely approaching advanced age (age 50–54), we will consider that your age along with a

---

[2] Plaintiff's brief consists of four (4) pages of any substantive argument, even though he alleges four (4) enumerations of error. Plaintiff makes no citation to relevant case law or Social Security rulings and regulations, save a few general references. Plaintiff's Reply does not cure his deficiencies. (Doc. 13.)

5

severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. §§ 404.1563 & 416.963.

ALJ Gold noted Plaintiff was forty-eight (48) years old at his alleged onset date, but that he "subsequently changed age category to closely approaching advanced age[.]" (Doc. 9-2, p. 29.) In addition, the ALJ specifically stated he considered, *inter alia*, Plaintiff's age in reaching his determination that Plaintiff is not disabled within the meaning of the Act. (Id. at p. 30.) As the ALJ considered Plaintiff's age and recognized Plaintiff's age placed him in the "closely approaching advanced age" category, Plaintiff's contention to the contrary is without merit.

**V.     Whether the ALJ Properly Considered Plaintiff's Educational Level**

Plaintiff asserts he dropped out of school in the ninth grade and is functionally illiterate. Plaintiff contends that, although ALJ Gold noted he was in special education classes for reading and math and has a limited education, the ALJ still found Plaintiff was not disabled. Plaintiff avers his limited education and age at the time of hearing "scream[ed]" for findings of transferability of skills, which the ALJ failed to do. (Doc. 11, p. 3.)

The Commissioner responds that substantial evidence of record supports the ALJ's finding that Plaintiff had a limited education, not that he is illiterate. (Doc. 12, p. 9.) Specifically, the Commissioner notes Plaintiff stated at the hearing he attended special classes for reading and math. In addition, the Commissioner notes Plaintiff completed a function report in April 2012 and stated he was able to pay bills, count change, and handle finances and that reading newspapers is one of his hobbies. (Id.)

Under the applicable Regulations, "[i]lliteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as

instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(1). In contrast, a "[l]imited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. § 404.1564(3).

The ALJ specifically noted Plaintiff was in special education classes for reading and math. (Doc. 9-2, p. 27.) ALJ Gold also observed Plaintiff has a "limited education[ ]", (id. at p. 29), and he considered Plaintiff's educational level in finding Plaintiff is not disabled within the meaning of the Act, (id. at p. 30). Additionally, Plaintiff testified during the hearing that he does not do well with reading and counting and that he would "[p]robably need a little help" reading a newspaper. (Id. at p. 48.)

Despite Plaintiff's characterization of being "functionally illiterate" and his counsel's general citation to the record, (doc. 11, p. 3), there is nothing in the record to support this characterization. Instead, the evidence of record, upon which ALJ Gold relied, is that Plaintiff possesses a limited education and was in special classes for reading and math. (See, e.g., Doc. 9-3, pp. 9, 18, 30, 40; Doc. 9-6, pp. 13, 68 (non-attorney representative's comment that Plaintiff has "learning disabilities").) Additionally, Plaintiff's school records reveal that the majority of his grades were no lower than a "C" average through the eighth grade. (Doc. 9-6, pp. 30–32.) ALJ Gold properly considered Plaintiff's limited educational level in determining that Plaintiff is not disabled, and his determination is supported by substantial evidence. Plaintiff's enumeration of error is without merit.

**VI.    Whether the ALJ Properly Determined Plaintiff's Residual Functional Capacity**

Despite finding Plaintiff suffers from recurrent arrhythmias, bilateral osteoarthritis of the knees, and degenerative disc disease of the lumbosacral spine exacerbated by obesity, ALJ Gold still determined Plaintiff can stand or walk and push or pull over an eight-hour day and could occasionally stoop, kneel, crouch, and crawl. (Doc. 11, p. 3.) Plaintiff contends the ALJ "flyspeck[ed]" each severe impairment he found Plaintiff to have, yet he still did not find Plaintiff disabled.

The Commissioner maintains ALJ Gold's finding that Plaintiff could perform work at the light level, with additional limitations, is based on a review of the entire record and in consideration of Plaintiff's impairments as a whole. While Plaintiff alleged a number of impairments, the Commissioner states Plaintiff failed to show any work-related limitations resulted from these impairments beyond those the ALJ credited in his residual functional capacity. (Doc. 12, p. 6.) Additionally, the ALJ gave significant weight to the opinions of Dr. Abraham Oyemo and Dr. John Hassinger, State agency consultants. Even then, the Commissioner asserts, the ALJ assessed Plaintiff as having a more restrictive residual functional capacity than these consultants did. (Id. at p. 7.) Additionally, the Commissioner notes the ALJ considered Plaintiff's obesity, as required by Social Security Ruling 02-1p, but still found Plaintiff could perform a limited range of work at the light exertional level. (Id. at p. 9.)

A residual functional capacity assessment must always consider and address medical source opinions. If the residual functioning capacity assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. Social Security Ruling 96-8p. "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880,

8

885 (10th Cir. 2007). The final determination of a plaintiff's residual functional capacity is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d) & (e)(2).

In finding that Plaintiff had the residual functional capacity to perform work at the light exertional level, with certain exceptions, ALJ Gold stated he considered all symptoms and the extent those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. (Doc. 9-2, p. 26.) While the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ did not find Plaintiff's statements concerning the intensity, persistence, and limited effects of those symptoms to be "entirely credible[.]" (Id. at p. 27.) Looking to the medical evidence, ALJ Gold noted Plaintiff had arthroscopy chondroplasty and a partial lateral meniscectomy performed in 2004. The ALJ stated a 2009 x-ray of Plaintiff's knee revealed degenerative changes and a patellofemoral spur, but his deep tendon reflexes were normal, and the straight leg raising test was negative. (Id. at p. 28.) In addition, Plaintiff's cranial nerves were intact, his motor functions and sensations were within normal limits, his lumbar spine was normal to inspection, and his knees had full range of motion. (Id.)

ALJ Gold observed that Plaintiff had a chest x-ray on May 2010, which showed Plaintiff's heart was a normal size, and an echocardiogram ("EKG") showed "not significant valvular heart disease and a left ventricle ejection fraction of sixty percent[.]" (Id.) Further, the ALJ observed a left heart catheterization showed no significant obstructive coronary artery disease and that imaging of Plaintiff's chest in December 2010 revealed no evidence of heart problems. Plaintiff had another EKG in February 2011, which revealed no acute ST-T changes. (Id.) The ALJ stated Plaintiff underwent an ablation, which was ineffective, in June 2011, and his heart had an irregular rhythm with no murmurs, rubs, or gallops in July 2011 and in February

9

2012. ALJ Gold observed Plaintiff had atrial fibrillation and complained of fatigue in November 2011, but he declined the recommended treatment, which included cardioversion and a repeated ablation. (Id.)

Moreover, the ALJ noted Plaintiff's blood pressure was 135/85 in January 2012, and he reported having chest pressure and palpitations. Plaintiff also complained of back pain, a mildly swollen knee, and stiffness in his back and knees. While Plaintiff's straight leg raise test was positive on the right, his sensations were intact, and his deep tendon reflexes were normal. (Id.) The ALJ stated Dr. Robert Pumpelly, in February 2012, noted Plaintiff had no edema, his pulse was 89, his oxygen saturation level was 98 percent, and his blood pressure was 177/77. At this same time, Plaintiff's heart had an irregular rhythm without murmurs, rubs, or gallops.

ALJ Gold noted that, in April 2012, Plaintiff's oxygen saturation level was 98 percent. ALJ Gold also noted Plaintiff reported having received epidural steroid injections that did not completely alleviate his pain. However, Plaintiff's heart had normal sounds without murmurs, rubs, or gallops. (Id.) The ALJ observed that Plaintiff's heart had a regular rhythm and rate with normal heart sounds and his cranial nerves were intact, and he had normal range of motion, normal sensations, and normal motor functions in June 2012. Further, the ALJ noted that, in February 2013, Plaintiff had no joint or back pain, was neurologically intact, and had full strength in his upper and lower extremities. (Id.)

ALJ Gold also considered Plaintiff's obesity[3], in accordance with Social Security Ruling 02-1p, and its effect on the symptoms associated with his recurrent arrhythmias, osteoarthritis of the right knee, degenerative disc disease of the left knee, and degenerative disc disease of the lumbrosacral spine. ALJ Gold determined Plaintiff's obesity and other conditions led to

---

[3] "Obesity" is defined as having a Body Mass Index ("BMI") of 30.0 or higher. Social Security Ruling 02-01p, https://www.ssa.gov/OP_Home/rulings/di/01/SSR2002-01-di-01.html. The ALJ noted Plaintiff had a BMI of 33.1. (Doc. 9-2, p. 29.)

limitations consistent with his findings as to Plaintiff's residual functional capacity. (Id. at p. 29.) In so doing, ALJ Gold gave "significant weight" to the opinions of Dr. Abraham Oyewo and Dr. John Hassinger, both of whom are State agency consultants and opined Plaintiff could perform work at the light exertional level. The ALJ noted these doctors' opinions were supported by the majority of objective medical evidence, their program expertise, and a thorough review of the record. (Id.) Additionally, the ALJ observed that the credibility of Plaintiff's allegations of disabling conditions was weakened by inconsistencies in those allegations, Plaintiff's statements regarding daily activities, and the medical evidence. (Id.)

Substantial evidence supports the ALJ's determination that Plaintiff had the residual functional capacity to perform work at the light exertional level, with certain limitations. ALJ Gold looked at the objective medical evidence and other evidence of record, as well as Plaintiff's subjective allegations. This enumeration of error is without merit.

## VII.    Whether the ALJ Properly Characterized the Vocational Expert's Testimony

Finally, Plaintiff contends that ALJ Gold did not ask the vocational expert at the hearing to consider a person having the residual functional capacity to perform light work with the exceptions he listed in his decision and any erosion of the light work occupational base these exceptions would make. (Doc. 11, p. 4.) In other words, Plaintiff asserts that the hypothetical the ALJ posed to the vocational expert did not contain the same limitations as the ALJ found Plaintiff to have.

The Commissioner avers the transcript of the hearing reveals that the hypothetical the ALJ posed to the vocational expert provided the same limitations the ALJ assessed in his residual functional capacity finding. Accordingly, the Commissioner maintains the ALJ properly

relied on the vocational expert's testimony to conclude Plaintiff could perform the occupations the vocational expert identified. (Doc. 12, p. 11.)

Under the Act, a plaintiff bears the burden of proving that he cannot perform his past relevant work. Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). If a plaintiff cannot perform his past relevant work, the burden shifts to the ALJ to prove that other work exists in the national economy which the plaintiff can perform. Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986). Through the use of vocational expert testimony, the ALJ must articulate specific jobs which the plaintiff is able to perform. Cowart v. Schweiker, 662 F.2d 731, 736 (11th Cir. 1981). The hypothetical questions which the ALJ poses to the vocational expert must comprehensively describe the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, No. 97-C-1548-N, 1999 WL 1335578, *7 (M.D. Ala. Dec. 9, 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)).

During the hearing, ALJ Gold posed the following hypothetical to the vocational expert, and asked the vocation expert to assume a "younger individual" at the time of Plaintiff's alleged disability and having "crossed the threshold having reached the age of 50, so he now [is] closely approaching advanced age." (Doc. 9-2, p. 67.)

> We're going to have him with a limited ninth grade education as far as writing and doing math, and a marginal education for being able to read. We've got an individual who's recurrent heart arrhythmias, he has bilateral knee osteoarthritis and degenerative disc disease from L4 through Sl, exacerbated by being a bit overweight. Are going to limit him to per forming light exertional work activities that never require him to climb ladders, ropes or scaffolding. He can individually sit, stand, walk, push and/or pull for at least six of eight hours in an eight hour work day, and lift and carry 20 pounds occasionally, defined as up to a third of an eight hour work day, 10 pounds frequently, defined as up to two thirds of an eight hour work day. He can individually climb ramps, stairs, balance, stoop, kneel, crouch and crawl for no more than a third of an eight hour work day. And he

> should avoid concentrated exposure to extreme vibration that might exacerbate his
> low back and/or bilateral knee pain.

(Id. at pp. 67–68.) In response to this hypothetical, Dr. Spitznagle stated this individual could not perform his past relevant work as an electrical helper. However, Dr. Spitznagle also stated this hypothetical individual could perform these jobs at the light exertional level which exists in the national and regional economy in significant numbers: ticket taker, photocopy machine operator, and plastic hospital product assembler. (Id. at p. 68.)

As noted above, ALJ Gold determined that Plaintiff could perform work at the light exertional level, with the following exceptions: no climbing of ropes, ladders, or scaffolds; standing or walking and pushing or pulling for six hours in an eight-hour workday; lifting or carrying twenty pounds occasionally (up to one-third of an eight-hour workday) and ten pounds frequently (up to two-thirds of an eight-hour workday); occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling; and avoiding concentrated exposure to extreme vibrations. (Doc. 9-2, pp. 25–26.) In addition, the ALJ found Plaintiff to suffer from recurrent arrhythmias, bilateral osteoarthritis of the knees, and degenerative disc disease of the lumbrosacral spine exacerbated by obesity. (Id. at p. 23.) These findings are consistent with the hypothetical ALJ Gold posed to the vocational expert at the hearing, and substantial evidence supports the ALJ's findings.[4] This enumeration of error is without merit.

---

[4] Plaintiff's counsel requests that the Court listen to a recording of the vocational expert's testimony. (Doc. 11, p. 4.) However, the Commissioner is only required to submit "a certified copy of the transcript of the record[.]" 42 U.S.C. § 405(g). In addition, the transcript of the hearing is certified to be a "true and complete transcription of the testimony recorded at the hearing in the case of Richard W. Daniels, held before [ALJ] Gold." (Doc. 9-2, p. 79.)

13

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 27th day of February, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA